FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 26, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MONICA J. S.,<br><br>                    Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO:  2:18-CV-82-FVS<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 13.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney Cory J. Brandt.  Defendant is represented by Special Assistant United States Attorney Jeffrey R. McClain.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is denied and Defendant's Motion, ECF No. 13, is granted.

## JURISDICTION

Plaintiff Monica J. S.[1] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income (SSI) on August 4, 2014, alleging an onset date of January 10, 2011.  Tr. 212-15, 274.  Benefits were denied initially, Tr. 138-40, and upon reconsideration, Tr. 145-46, 148-49.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on December 1, 2016.  Tr. 44-74.  On December 27, 2016, the ALJ issued an unfavorable decision, Tr. 24-36, and on January 17, 2018, the Appeals Council denied review.  Tr. 1-5.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1982 and was 34 years old at the time of the hearing.  Tr. 212.  She has a high school diploma.  Tr. 70.  She has work experience as a caregiver for adults and children, as a meat counter clerk, and in retail, telemarketing, and electronics manufacturing.  Tr. 65-70.  She alleges she cannot

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

work due to pain while walking, standing, lifting, bending, and going up and down stairs. Tr. 258. Because of pain, she becomes overwhelmed and tired easily. Tr. 258.

Plaintiff testified that she has pain and numbness in her left hip. Tr. 57. She sometimes loses her balance because of the lack of sensation. Tr. 58. She has a hard time walking over uneven surfaces and curbs. Tr. 58. She uses a walker and has a disabled parking permit. Tr. 58-59. She testified she can walk only short distances because walking makes her tired and causes pain. Tr. 59. Sitting also causes pain. Tr. 59-60. She lies down at least four times a day for 20 minutes at a time. Tr. 60. She has a caregiver who helps with lifting and housework twice a week. Tr. 60.

Plaintiff testified her memory has been getting worse. Tr. 61. She got lost driving to her mother's house which she visits frequently. Tr. 62. She cannot focus. Tr. 62.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a

mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must

be "of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §§

423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine

whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-

(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is

engaged in "substantial gainful activity," the Commissioner must find that the

claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c),

416.920(c). If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled. 20 C.F.R.

§§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national

economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since January 10, 2011, the alleged onset date.  Tr. 26.  At step two, the ALJ found that Plaintiff has the following severe impairments: gestational diabetes mellitus, obesity, major depressive disorder vs post-partum depression, and anxiety.  Tr. 26.  At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 27.

The ALJ then found that Plaintiff has the residual functional capacity to perform sedentary work with the following additional limitations:

> [T]he claimant can perform occasional postural activities, but never climb ladders, rope, or scaffolds.  The claimant should avoid concentrated exposure to industrial vibrations and hazards.  The claimant is able to understand, remember, and carry out simple, routine, repetitive tasks and instructions.  The claimant is able to maintain attention and concentration on simple routine tasks for 2 hour intervals between regularly scheduled breaks for an 8 hour work day/40 hour work week.  The claimant can have only occasional changes in a work setting/routine, and no fast-paced production rate (defined as assembly line type work).

Tr. 29.

At step four, the ALJ found that Plaintiff is able to perform any past relevant work as a telemarketer.  Tr. 35.  Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 10, 2011, through the date of the decision.  Tr. 35.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 12.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly identified all of Plaintiff's severe impairments;

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 8

2.     Whether the ALJ properly considered the medical opinion evidence; and

3.     Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 12 at 10-19.

**DISCUSSION**

**A.    Severe Impairments**

Plaintiff contends the ALJ failed to properly identify all of her severe impairments at step two.  ECF No. 12 at 11.  At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities.  20 C.F.R.§§ 404.1520(c), 416.920(c).  To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508, 416.908 (1991).  "Step two is merely a threshold determination meant to screen out weak claims.  It is not meant to identify the impairments that should be taken into account when determining the RFC."  *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (citation omitted).  The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security

regulations.  *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549050 (9th Cir. 1985).

The ALJ found Plaintiff has the severe impairments of gestational diabetes, obesity, depression, and anxiety.  Tr. 26.  The ALJ also noted Plaintiff had chronic lower back pain symptoms but found the treatment notes reflect no objective findings to support any limitations due to back issues.  Tr. 27.  Plaintiff contends the ALJ should have also identified her hip condition, femoral acetabular impingement, as a severe impairment.  ECF No. 12 at 11.  Plaintiff notes various symptoms and observes that reviewing physicians Norman Staley, M.D., and Wayne Hurley, M.D., both opined her primary severe impairment is "dysfunction of a major joint."  ECF No. 12 at 12 (citing Tr. 96, 111).  Indeed, Dr. Staley and Dr. Hurley acknowledged Plaintiff's physical limitations are due to femoral acetabular impingement of bilateral hips, lumbago, and obesity.  Tr. 84, 114-15.

Even if the ALJ should have included Plaintiff's hip condition as a severe impairment, any error is harmless.  If the ALJ erred by not finding an impairment severe at step two, reversal may not be required if the step is resolved in the claimant's favor.  *See Buck*, 869 F.3d at 1048-49; *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Here, the ALJ resolved step two in Plaintiff's favor by finding there are severe impairments, continuing the sequential evaluation, and considering the symptoms cited by Plaintiff.  Tr. 30-34.  Furthermore, the ALJ credited the opinions

of Dr. Staley and Dr. Hurley and included all of limitations they assessed in the RFC finding.[2] Tr. 29, 83-85, 113-15. Plaintiff has not identified any additional limitations supported by the record due to her hip condition, and therefore the outcome would be the same even if femoral acetabular impingement is credited as a severe impairment. Thus, any error at step two regarding Plaintiff's hip problem is harmless. *Stout*, 454 F.3d at 1056; *Burch*, 400 F.3d at 682; *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (where corrected error does not change the outcome, the error is harmless).

**B.    Medical Opinion Evidence**

Plaintiff contends the ALJ failed to properly consider the opinion of examining physician Kevin Weeks, D.O. ECF No. 12 at 13-14. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those

---

[2] Dr. Staley and Dr. Hurley both opined Plaintiff is limited to occasional and frequent lifting and carrying of 10 pounds; standing or walking for two hours and sitting for six hours in an eight-hour day, with postural limitations of occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders, ropes, or scaffolds, and must avoid concentrated exposure to hazards. Tr. 83-85, 113-15. These limitations are consistent with RFC finding of sedentary work with the same postural limitations. Tr. 29; *see* 20 C.F.R. §§ 404.1567, 416.967.

who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

Dr. Weeks examined Plaintiff and prepared a report in December 2014. Tr. 470-75. Dr. Weeks diagnosed chronic hip pain due to femoral acetabular impingement bilaterally and lumbago with preserved range of motion. Tr. 475. He opined Plaintiff could stand or walk for two hours in an eight-hour workday; sit for four to six hours in an eight-hour workday; needs a walker and cane for balance and pain; can lift and carry 10 pounds occasionally and frequently; cannot climb, balance, stoop, kneel, crawl or crouch due to impingement of her hips; and must avoid working around heights and heavy machinery. Tr. 475.

The ALJ gave significant weight to Dr. Weeks' opinion that Plaintiff is limited to sedentary work. Tr. 34. However, the ALJ gave no weight to any limitations resulting in a restriction to less than sedentary work[3]. Tr. 34. Thus, the ALJ gave no weight to the postural limitations assessed by Dr. Weeks. Tr.

Because Dr. Week's opinion regarding postural limitations was contradicted by the opinion of the reviewing physicians, Wayne Hurley, M.D., Tr. 83-85, and

[3]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567, 416.967.

Norman Staley, M.D., Tr. 113-15, the ALJ was required to provide specific and legitimate reasons for rejecting that portion of Dr. Weeks' opinion.[4]  *Bayliss*, 427 F.3d at 1216.

The ALJ rejected the postural limitations assessed by Dr. Weeks because "there is absolutely no basis . . . to totally preclude all postural activities."  Tr. 34. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ observed that Plaintiff has three young children ages three, one, and a newborn, and the record reflects that Plaintiff cares for them daily.  Tr. 34, 310 ("full time mom"), 451 ("full time

---

[4] Plaintiff contends on reply that "a non-examining doctor's opinion cannot be used to reject the opinion of an examining doctor because it does not qualify as substantial evidence on its own."  ECF No. 14 at 4 (citing *Lester*, 81 F.3d at 831). Plaintiff misconstrues *Lester*, which actually says, "[i]n the absence of record evidence to support it, the nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of either the treating doctor's or the examining psychologist's opinion."  *Id.* at 832 (citations omitted). In this case, the ALJ cited "record evidence" in addition to the nonexamining opinions in giving little weight given to a portion of Dr. Weeks' opinion.  Tr. 34.

mom"), 466 (arrives for appointment "pushing stroller with young child"), 479 ("spends most of her time during the day caring for her two young children), 662 (arrives for appointment with two young children and is pregnant; "she is going to stop work on 3/26/16 and would like a note for her employer" and "would like to be re-hired at a later date").

The ALJ noted that being a full-time mother requires Plaintiff to dress, feed, and bathe her children, change diapers, transfer one or more children in and out of a crib, lift one or more children in and out of a high chair, and hold her children. Tr. 34. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ALJ reasonably inferred that "these daily child care activities require at a minimum occasional bending, stooping, crouching, reaching and occasional lifting of 10 pounds or more." Tr. 34. The ALJ's inference is reasonable and supported by the record and this is a specific, legitimate reason for giving no weight to the postural limitations assessed by Dr. Weeks.

Plaintiff notes the record reflects "that during a typical day she helps her children get ready for school, plays with them on the floor and helps the children while sitting." ECF No. 12 at 13 (citing Tr. 472). She reported "trouble carrying her children" and "difficulty taking her kids to the park." Tr. 656. Neither of these records support Dr. Weeks' finding that Plaintiff can perform zero balancing,

stooping, kneeling, crawling, climbing, or crouching due to hip pain. Helping

young children get ready for school by nature requires some postural activity.

Similarly, playing on the floor requires stooping or crouching. Dr. Weeks did not

find Plaintiff cannot carry and the ALJ included a limit on carrying in the RFC.

Tr. 29, 475. "[D]ifficulty taking her kids to a park" does not implicate any specific

functional limitation. Tr. 656. The ALJ acknowledged Plaintiff may have

difficulty with some postural activities and limited postural activities to occasional

in the RFC, with an additional limitation to never climb ladders, rope, or scaffolds.

Tr. 29.

Furthermore, even if the ALJ erred in rejecting the postural limitations

assessed by Dr. Weeks (and the Court does not so conclude), any error would be

harmless. The erroneous omission of postural limitations from an RFC for

sedentary work is harmless "since sedentary jobs require infrequent stooping,

balancing, crouching, or climbing." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169,

1174 (9th Cir. 2008); *see also* Social Security Ruling (S.S.R.) 96–9p, at 8 (postural

limitations of kneeling, climbing, balancing, crouching, or crawling would not

erode the occupational base for a full range of unskilled sedentary work; most

unskilled sedentary occupations require very little to occasional stooping).

Plaintiff also notes the ALJ misstated Dr. Weeks' finding regarding carrying

by asserting "there is absolutely no basis to limit carrying to less than 10 pounds."

Tr. 34; ECF No. 12 at 14. Dr. Weeks found Plaintiff's maximum lifting and

carrying capacity is 10 pounds occasionally and frequently.  Tr. 475.  The error is harmless because the limitation to sedentary work in the RFC means lifting and carrying is limited to 10 pounds, which is consistent with Dr. Weeks' lifting and carrying assessment.   20 C.F.R. §§ 404.1567, 416.967.  An error is harmless when it is inconsequential to the ultimate nondisability determination.  *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout*, 454 F.3d at 1055; *Batson*, 359 F.3d at 1195-97.

Plaintiff also notes Dr. Weeks' finding that Plaintiff had difficulty with balance and was unable to squat or hop during her physical examination.  ECF No. 12 at 14.  Plaintiff asserts Dr. Weeks' opinion is based "off the records he reviewed, his objective findings, as well as [Plaintiff's] subjective complaints." ECF No. 12 at 14.  Plaintiff makes no argument, but presumably Plaintiff's point is that Dr. Weeks' findings are supported by his exam and review of the record. However, even if the few findings noted by Plaintiff supported the conclusion that Plaintiff can never engage in postural activities (and the Court does not so find), that would not negate the ALJ's conclusion based on the record overall that Plaintiff's child care activities contradict Dr. Weeks' finding regarding postural limitations.  The ALJ gave specific, legitimate reasons supported by substantial evidence for rejecting the postural limitations assessed by Dr. Weeks.

**C.      Symptom Claims**

Plaintiff contends the ALJ improperly rejected her symptom claims. ECF No. 12 at 14-19. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834; *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms less than fully persuasive. Tr. 34.

First, the ALJ found the medical evidence indicates Plaintiff's impairments are not as severe as alleged. Tr. 30-31. While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011). The ALJ discussed the medical record in detail.[5] Tr. 30-31. In July and August 2014, Plaintiff

[5]The ALJ discussed Plaintiff's physical and mental impairments. Tr. 30-31. As noted by Defendant, Plaintiff does not challenge any of the findings related to her

complained of pain and numbness in her bilateral hips, legs, and low back. Tr. 30, 305. She reported "the pain often limits her ability to walk, climb stairs, raise her legs and bend." Tr. 30, 305. The ALJ noted, however, that diagnostic x-rays of her hips from July 2014 showed no acute fracture, Tr. 307-08, and an August 2014 lumbar spine MRI was unremarkable, Tr. 314. Tr. 30. In October 2014, Plaintiff had a neuromuscular medicine consultation for complaints of leg dysfunction after the birth of her first child in 2011. Tr. 450. She complained of pain, instability, weakness, and numbness from her lumbar spine through her hips and legs. Tr. 450. Scott Carlson, M.D., found all objective tests results were normal or minimal, Tr. 454, including a negative hip arthrogram. Tr. 454, 508. He concluded, "I don't find clinical or electrodiagnostic evidence of active or remote nerve injury in this patient" and "[a]t this point there is no neuromuscular etiology for her leg complaints or abnormal gait." Tr. 454. Additionally, Dr. Carlson found "evidence of some embellishment on examination including gait and power examination which is not neurologic." Tr. 454.

---

mental impairments and any challenge to the ALJ's evaluation of her mental impairments is therefore waived. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (noting any argument not made in the opening brief is waived).

The ALJ also noted that in 2015 and 2016, Plaintiff complained of pain in her upper extremities and received chiropractic care which helped decrease pain and improved range of motion. Tr. 31, 493-506, 509-17, 590-608. In March 2016, Plaintiff was 14 weeks pregnant and a neurology exam showed Plaintiff had a normal gait, negative Romberg, no atrophy, full muscle strength in the upper and lower extremities, and no sensory or reflex deficits. Tr. 31, 615, 618. In September 2016, Plaintiff's one-month postpartum exam was normal. Tr. 570. Plaintiff saw Mary Bergrum, M.D., in October 2016 regarding diabetes. Tr. 656-67. She was in no distress and on exam her gait was normal. Tr. 657. In November 2016, her musculoskeletal and neurological systems were normal on exam. Tr. 575, 577-79.

The ALJ concluded that overall, although Plaintiff may have limits on the type of work she can perform, the objective findings do not support Plaintiff's allegations of an inability to do all work. Tr. 30. Plaintiff insists "there *were* objective findings" of hip pain and that the ALJ "failed to recognize" that pain is subjective. ECF No 12 at 16. The ALJ did not conclude that there are is no objective evidence of hip pain, only that the objective evidence does not support the level of limitation alleged. Tr. 30-31, 34-35. Furthermore, the ALJ acknowledged the subjectivity of pain and noted that when statements about symptoms and pain are not supported by objective medical evidence, other

evidence must be considered. Tr. 30. However, as noted *supra*, that does not mean objective findings are irrelevant or not to be considered.

Plaintiff also notes the "sought treatment repeatedly for her pain," ECF No. 12 at 16, which is not objective evidence. Plaintiff cites the findings of Dr. Weeks, but that opinion was partially rejected by the ALJ for legally sufficient reasons, discussed *supra*, and was also largely credited. ECF No. 12 at 16; Tr. 34, 475. Lastly, Plaintiff suggests the ALJ improperly considered Dr. Carlson's finding of some embellishment on exam since Dr. Carlson "did not dismiss" Plaintiff's complaints. ECF No. 12 at 16. Despite Plaintiff's assertions to the contrary, the ALJ did not dismiss Plaintiff's complaints, as the ALJ gave Plaintiff the benefit of the doubt and credited most of Dr. Weeks' opinion, which is the most restrictive medical opinion in the record. Tr. 32, 34. The ALJ's finding that the objective evidence does not support the degree of limitation alleged by Plaintiff is based on a reasonable interpretation of the record and substantial evidence.

Second, the ALJ found Plaintiff's daily activities indicate her impairments are not as severe as alleged. Tr. 30-31. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day

engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ noted Plaintiff maintains the ability to perform tasks such as attending to her personal needs, preparing meals, performing household duties, shopping in stores, watching television, reading, spending time with family, and taking care of children. Tr. 30. The ALJ found that although Plaintiff may have some limitations, these activities undermine her allegations of significant difficulty with exertional activities. Tr. 30, 258-61, 379. Plaintiff contends her activities are qualified by her physical difficulties. ECF No. 12 at 17; Tr. 458, 479, 513, 516. For example, when she goes to the grocery store, she uses an electric cart, and she has a caregiver who helps with basic chores in her home once or twice a week. Tr. 58-60, 271, 479. In this case, particularly in light of Plaintiff's allegations and the RFC finding, the ALJ's finding regarding daily activities is reasonable and based on substantial evidence.

Third, the ALJ found Plaintiff's statements to her providers varied from her testimony at the hearing. Tr. 43-44. In evaluating a claimant's symptom claims,

an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Thomas*, 278 F.3d at 958-59. For example, the ALJ noted that Plaintiff testified she has problems with balance and falls, Tr. 58, but in September 2015 she denied poor balance upon exam, Tr. 539. Tr. 31. On reply, Plaintiff notes these statements were made almost a year apart but fails to identify any error in the ALJ's interpretation of the evidence. ECF No. 14 at 6. Plaintiff also asserts this record is distinguishable because "her physical symptoms were not the focus of the appointment." ECF No. 14 at 6. However, it would be reasonable to expect that Plaintiff's responses to questions about her symptoms would be the same regardless of the provider or the purpose of the visit.[6] This not does not rebut the ALJ's reasonable interpretation of the evidence and this is a clear and convincing reason supported by substantial evidence.

---

[6] Plaintiff saw treating ARNP Angella Julagay for concerns related to her memory in September 2015. Tr. 536. In addition to depression screening, Ms. Julagay reviewed Plaintiff's current problems, medications, performed a review of systems, physical exam, obtained vital signs, and listed her impression and recommendations for Plaintiff's mental and physical health. Tr. 536-40.

1    Fourth, the ALJ found Plaintiff's response to conservative treatment

2    undermines her allegations.  Tr. 34.  Claims about disabling pain are undermined

3    by favorable response to conservative treatment.  *Tommasetti v. Astrue*, 533 F.3d

4    1035, 1039-1040 (9th Cir. 2008); *see also Parra v. Astrue*, 481 F.3d 742, 750–51

5    (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to

6    discount a claimant's testimony regarding severity of an impairment").  The ALJ

7    found that Plaintiff has received only conservative treatment and her conditions

8    have stabilized.  Tr. 34; *see* Tr. 454, 465-66, 493-95, 497-505, 509-17, 553.

9    Plaintiff observes that surgery has not been offered as a treatment, ECF No. 14 at

10   5, which supports the ALJ's conclusion regarding conservative treatment.  Plaintiff

11   also contends her treatment has not "fully resolve[d] her symptoms," ECF No. 14

12   at 5, but full resolution of symptoms is not required for a nondisability finding.

13   This is a clear and convincing reason supported by substantial evidence.

14       Fifth, the ALJ noted evidence of exaggeration of symptoms which

15   undermines Plaintiff's symptom claims.  Tr. 31.  An ALJ may reject a claimant's

16   testimony if there is evidence of a tendency to exaggerate symptoms.  *Tonapetyan*

17   *v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  The ALJ noted that Dr. Carlson

18   found "embellishment on examination" and "there is no neuromuscular etiology

19   for her leg complaints or abnormal gait."  Tr. 31, 454.  This is a reasonable

20   consideration in evaluating Plaintiff's testimony.

21

Plaintiff observes without making any argument that despite Dr. Carlson's finding of embellishment, "he did not dismiss Plaintiff's complaints." ECF No. 14 at 7. Plaintiff presumably references Dr. Carlson's recommendation that she continue physical therapy for soft tissue pain and stated, "I certainly agree that an illotibial band problem and possible other orthopedic etiologies may be a cause for ongoing complaints." Tr. 454. Plaintiff's point is unclear as the ALJ did not find that she has no basis for any complaints. Rather, the ALJ found Plaintiff's testimony regarding the severity of her symptoms is not fully supported, in part because Dr. Carlson noted a finding of exaggeration of symptoms. This is a clear and convincing reason supported by substantial evidence.

**D.    Step Four**

Plaintiff argues the ALJ erred at step four because the vocational expert's opinion that Plaintiff can return to past relevant work was based on an incomplete hypothetical. ECF No. 12 at 18. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir.

1986).  The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence.  *Magallanes*, 881 F.2d at *id.*

Plaintiff's argument assumes that the ALJ erred in considering the medical opinion evidence and Plaintiff's subjective complaints.  ECF No. 12 at 18.  The ALJ's reasons for rejecting the postural limitations in Dr. Weeks' opinion and Plaintiff's symptom claims were legally sufficient and supported by substantial evidence, discussed *supra*.  The ALJ therefore properly included occasional postural limitations in the RFC and hypothetical to the vocational expert.  The hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record.  The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper.  *See id.*; *Bayliss*, 427 F. 3d at 1217-18.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

1     **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

2 Order and provide copies to counsel.  Judgment shall be entered for Defendant and

3 the file shall be **CLOSED**.

4     **DATED** March 26, 2019.

5

6                         *s/ Rosanna Malouf Peterson*
                     ROSANNA MALOUF PETERSON
                         United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21